# Exhibit 1

**COMMONWEALTH OF KENTUCKY**
**JEFFERSON COUNTY CIRCUIT COURT**
**CIVIL ACTION NO.: _____**

**TOYIA DUNBAR**                                                                                          **PLAINTIFF**
**7216 FEYHURST DRIVE**
**LOUISVILLE, KY 40258**

v.

**EVOLENT HEALTH PLAN**                                                                              **DEFENDANT**
**800 N. GLEBE ROAD**
**SUITE 500**
**ARLINGTON, VA 22203**

## VERIFIED COMPLAINT

Comes now the Plaintiff, Toyia Dunbar ("Ms. Dunbar" or "Plaintiff"), by and through counsel, and for her Complaint against Evolent Health, Inc., ("Defendant" or "Evolent") and states as follows:

### JURISDICTION AND VENUE

1. Plaintiff, Ms. Dunbar, is a resident of Louisville, Kentucky and as such, is a resident of Jefferson County, Kentucky.

2. Defendant, Evolent Health, Inc., is a Virginia Corporation with its principal place of business in Illinois, and as such is either a resident of Virginia, or Illinois.

3. Defendant submits itself to the jurisdiction of this Court under KRS 454.210, by transacting any business in the Commonwealth. Specifically, Defendant operates a facility in Louisville, Kentucky.

4. Plaintiff's cause of action arises out of events that took place in Louisville, Kentucky.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000001 of 000012

5. Plaintiff's damages exceed the threshold requirement of five-thousand dollars ($5,000) and, therefore, this Court has proper jurisdiction over the matter.

6. Plaintiff's causes of actions arise under the Kentucky Civil Rights Act, as codified in KRS Chapter 344. As such, pursuant to KRS § 344.450 this action must be and is being brought in the Circuit Court in the county in which the alleged action arose.

## FACTUAL ALLEGATIONS

7. Ms. Dunbar is a sixty-two (62) year old former employee of the Defendant, Evolent Health Inc.

8. Ms. Dunbar was employed as a "Customer Care Connector" at the Defendant Company since July 10, 2000, until she resigned on January 31, 2020. The Plaintiff was paid $20.86 per hour.

9. Ms. Dunbar dedicated approximately 19.5 years of exemplary employment to the Defendant Company; she showed up on time and was dedicated to her work.

10. Defendant Company is a health care insurance provider, previously known as Passport Health before undergoing an acquisition by Evolent Health Inc., in May of 2015.

11. Ms. Dunbar took short term FMLA to be the primary health care giver to which she used as necessary. The Defendant was made aware of the situation between Ms. Dunbar and her mother.

12. On one occasion, Ms. Dunbar took unpaid FMLA leave to take her mother to a physician's appointment. Upon returning to work, Corporate Payroll reached out to Ms. Dunbar as her timesheet had not been submitted.

13. Ms. Dunbar explained to Corporate Payroll that she had been submitting her timesheet to her supervisor, Morgan Bernard ("Ms. Bernard"), and that Corporate Payroll would need

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000002 of 000012

to speak with her about why her timesheet was not submitted, as it was her responsibility to ensure that Ms. Dunbar's timesheet was submitted.

14. Following this, Ms. Dunbar sent an email to both HR and Ms. Bernard detailing that they would need to communicate about the timesheet not being submitted as she had submitted it properly to Ms. Bernard and it was her responsibility to submit it to HR.

15. David Yount, ("Mr. Yount"), the Manager of Evolent Health, has a previous history of not returning the Ms. Dunbar's phone calls or emails. So, it was not surprising that Ms. Dunbar had not received communication as to whether the missing timesheet had been taken care of. Mr. Yount is Caucasian.

16. The HR department continued to reach out to Ms. Dunbar about her missing timesheets, but never mentioned whether they had reached out to her manager or if he or Ms. Bernard had submitted the Ms. Dunbar's timesheet properly.

17. On June 16, 2017, Ms. Dunbar's mother passed away. Subsequently, Ms. Dunbar took a leave of absence to manage the loss.

18. During Ms. Dunbar's leave of absence, she began seeing a Psychiatrist. The physician determined that she would need several accommodations upon returning to work to help manage her Anxiety and Depression, which had been exacerbated as a result of the working environment she had been subject to.

19. Upon her return, Ms. Dunbar was informed that she would need to attend a six (6) week training program. However, another woman who was out on leave during the same time was only required to attend a two (2) to three (3) week training program. Further, Mary Matthews ("Ms. Matthews"), who was out on leave as well, was not required to retrain as

Ms. Dunbar was. Ms. Dunbar was, therefore, treated differently than other similarly situated employees upon her return to work.

20. In addition, there was a new computer system in place that was implemented during Ms. Dunbar's leave of absence. Upon her return, Ms. Dunbar was notified that she would need to attend a six (6) week training program on the new system for which she would report to her manager.

21. Twenty (20) minutes into the training, Ms. Dunbar went to her manager, Mr. Yount, and told him that she did not feel comfortable working with the new system. He ignored her concerns and replied, "Oh, you'll be okay." For the remainder of the training, Mr. Yount never acknowledged or greeted Ms. Dunbar, despite on numerous occasions sitting in the same aisle where Ms. Dunbar sat.

22. While employed at the Defendant, Ms. Dunbar had applied to several positions in order to move out of customer service. Ms. Dunbar, on several occasions, made it known to her superiors that she was struggling at her job and repeatedly asked for assistance to help her move to another department.

23. One of these positions to which Ms. Dunbar applied was a Community Health Worker position. Trish Cooper ("Ms. Cooper"), the hiring manager, had been in contact with Ms. Dunbar on several occasions regarding the position. Ms. Cooper had stated that Ms. Dunbar was qualified for the position, encouraged her to apply for it and ensured Mr. Dunbar that she would be on the lookout for her application.

24. Ms. Dunbar received an interview for the Community Health Worker position and felt that the interview went well. Although Ms. Cooper never explicitly promised the position to Ms. Dunbar, she misled her to believe that she would be receiving the position.

25. Following the interview, Ms. Dunbar was informed that she did not qualify for the position and thus, would not be receiving it. This is contradictory to what was implied to her by the hiring manager.

26. Ms. Dunbar followed up on this information with Sonya Brown ("Ms. Brown"), the HR director. In this communication, she specified that she did not understand why she was led on and why all of a sudden she was not qualified.

27. Ms. Dunbar had been witnessing that several other employees within her department who were less experienced then her were receiving positions which they did not qualify for. Also, Morgan Bernard ("Ms. Bernard"), the Plaintiff's supervisor, had stated that her department could not afford to have any more Care Connector Representatives leave, as it reflected poorly on her.

28. The hostile work environment, of which Ms. Dunbar has been subjected to since October of 2017, exacerbated her Anxiety, Depression, and severe stress, which led to her being prescribed medications.

29. Ms. Dunbar repeatedly reached out to her manager, Mr. Yount, asking for assistance in applying for another job within the company. Mr. Yount consistently ignored Ms. Dunbar. His refusal to help Ms. Dunbar was witnessed by other employees within the company.

30. On one occasion, Ms. Dunbar reached out to her supervisor, Cassie Gonzales ("Ms. Gonzales") (who had replaced Ms. Bernard as supervisor upon Ms. Dunbar's return to work), for her to get in contact with Mr. Yount for her when she received a phone call from the coroner that her brother had passed in a car accident to which she needed to attend. In this case, Ms. Dunbar had a family emergency and needed to leave work and made every attempt to go through the proper channels to leave, yet Mr. Yount refused her calls until

she went through another source to get him to answer. Another employee was in close proximity to and witnessed Mr. Yount refusing Ms. Dunbar's calls in an emergency situation.

31. Other employees within the company have been treated differently than Ms. Dunbar, who noticed that management helped others apply for jobs, gave them leadership vouches and helped them move within the company, even if they lack experience, if they are favored. Ms. Dunbar was an exemplary employee and deserved the same treatment of which management gave to others.

32. Ms. Dunbar's physician filled out several forms making requests for job accommodations. These requests for accommodations went unfounded. The purpose of the doctor's accommodation request was to have Ms. Dunbar moved from outbound calls to inbound calls. Ms. Dunbar was blocked by her manager, Mr. Yount, and others from moving to a position which accommodates her medical needs.

33. Ms. Dunbar reached out to the HR department on numerous occasions to no avail.

34. Ms. Dunbar continues to suffer from the actions of Defendant, as she remains in treatment with a Mental Health Therapist and a Psychiatrist.

## COUNT I. DISRIMINATION BASED ON RACE

35. Plaintiff hereby incorporates each and every allegation of paragraphs one (1) through thirty-three (33), as if fully set forth with particularity herein.

36. Pursuant to KRS § 344.040, it is unlawful for an employer to discriminate against any individual because of the individual's race, color, religion, national origin, sex, or age forty (40) and over.

37. Defendant is an employer pursuant to KRS § 344.030.

38. Ms. Dunbar is an adult African American female and is thus a member of a protected class.

39. Ms. Dunbar was qualified for the position that she held, as she had worked there for approximately twenty (20) years.

40. Ms. Dunbar was treated differently than similarly situated employees who are Caucasian. Her manager, Mr. Yount, who is Caucasian, consistently ignored Ms. Dunbar when she sought his assistance. However, other employees were given ample assistance when needed. It became clear to Ms. Dunbar that she was not favored within the company and therefore, was discriminated against.

41. Ms. Dunbar was discriminated against based on her race on numerous occasions.

42. These actions taken by the Defendant were due to Ms. Dunbar's race, are in violation of KRS § 344 and establish a *prima facie* case of discrimination against Evolent.

43. Ms. Dunbar, having shown that she was treated differently because of her race, to her detriment, has suffered, and will continue to suffer, monetary losses based on Evolent's actions.

## COUNT II. DISCRIMINATION BASED ON AGE

44. Plaintiff hereby incorporates each and every allegation of paragraphs one (1) through forty-two (42), as if fully set forth with particularity herein.

45. KRS § 344.040(1)(a) makes it unlawful for an employer, "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's … age forty (40) and over."

46. In Kentucky, "there are two paths for a plaintiff seeking to establish an age discrimination case. One path consists of direct evidence of discriminatory animus." *Williams v. Wal-Mart*

*Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005). The other path is establishing a *prima facie* case of age discrimination where Plaintiff "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which they were discharged, and (4) was replaced by a person outside the protected class." *Id.* at 496.

47. Defendant openly discriminated against Ms. Dunbar because of her age.

48. As stated, Ms. Dunbar's date of birth is June 29, 1959, and as such, she is a member of a protected class.

49. Ms. Dunbar was openly discriminated against, because of her age, when she was denied for several positions which she both applied and was qualified for but did not receive. A younger, and less experienced, employee received the position of which the Plaintiff was denied.

50. Further, other, younger, employees were given ample assistance in their efforts to transfer within the company. The same level of care was not given to Ms. Dunbar, as her attempts to move within the company, in an effort to accommodate her ongoing medical needs, were consistently ignored.

51. The actions taken by Defendant were due to Ms. Dunbar's age, in violation of KRS § 344.040 and establish a *prima facie* case of gender discrimination against Evolent.

## COUNT III. HOSTILE WORK ENVIRONMENT

52. Ms. Dunbar hereby incorporates each and every allegation of paragraphs one (1) through fifty (50), as if fully set forth with particularity herein.

53. In Kentucky, to establish a *prima facie* case of hostile work environment, Plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment regarding their protected class; (3) the harassment was based on the protected

class; (4) the harassment had the effect of unreasonably interfering with her work performance by creating intimidating, hostile, or offensive work environment; and (5) the existence of respondent superior liability.

54. Ms. Dunbar, as an African American female with a mental disability over the age of forty (40), is a member of a protected class.

55. Ms. Dunbar was subjected to unwelcomed harassment. Ms. Dunbar was consistently ignored, even when she was facing devastating family emergencies which needed her prompt attention.

56. Further, it had been implied to Ms. Dunbar on various occasions that she would be transferring within the company, only to be informed that she was instead, not qualified. These contradictions weighed heavily on Ms. Dunbar, exacerbating her Anxiety and Depression.

57. The harassment unreasonable interfered with Ms. Dunbar's work performance by creating and/or condoning an intimidating, hostile, or offensive work environment.

58. Respondent superior liability theorizes that when one acts through the agency of another, he is himself acting and thus responsible for the acts of his agent. *Brooks v. Grams*, 289 S.W.3d 208, 211 (Ky. Ct. App. 2008). "When an agent fails in any duty which he owes a third party or the public generally, the principal is responsible for the future." *Smith v. Smith*, 333 S.W.2d 503, 504 (Ky. 1960). Under these circumstances, an employer is strictly liable for damages resulting from the tortious acts of his employees. *Patterson v. Blair*, 172 S.W.3d 361, 364 (Ky. 2005).

59. In the current case, Defendants have acted in a tortious manner. Evolent is liable for the hostile actions of their employees through the theory of respondent superior liability.

## CAUSE OF ACTION IV: INTERFRENCE WITH FMLA RIGHTS

60. Ms. Dunbar hereby incorporates each and every allegation of paragraphs one (1) through fifty-eight (58), as if fully set forth with particularity herein.

61. The time Plaintiff took off work as a result of her mother's health condition qualified as an FMLA leave of absence in accordance with the provisions of the FMLA.

62. The foregoing conduct by Defendant violates the FMLA and constitutes interference with Plaintiff asserting rights under the FMLA in violation of 29 U.S.C. §2615(a)(1).

63. As a direct and proximate result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has sustained and continues to sustain lost wages, lost benefits, and has incurred other costs and expenses, including, but not limited to attorney fees.

64. Upon Ms. Dunbar's return to work, HR had presented that she would be receiving six (6) weeks of training. However, other employees who returned to work following FMLA received the option to participate in a two (2) day refresher training or return to work like normal and were not demanded to retrain for six (6) weeks. Therefore, interfering with her FMLA rights, specifically the Plaintiff's ability to return to work and attend a two (2) day course instead of a six (6) week training.

65. Further, Ms. Dunbar's physician sent several forms to the Defendant, requesting accommodations for the Plaintiff. These requests for accommodations were ignored by the Defendant.

66. The Defendant unreasonably interfered with Ms. Dunbar's FMLA rights.

## PRAYER FOR RELIEF

Plaintiff, Ms. Client Name, hereby incorporates all preceding paragraphs as if fully set forth with particularity herein.

**WHEREFORE**, Ms. Toyia Dunbar, prays this Court:

1. Declare Defendants' conduct is in violation of Ms. Toyia Dunbar's rights;

2. Award Ms. Toyia Dunbar compensatory damages in such amount as shall be proven at trial for her economic, personal and other losses;

3. Award Ms. Toyia Dunbar's damages in an amount to be proven at trial for humiliation, embarrassment, apprehension about her future, and emotional stress, which the Defendants caused Ms. Toyia Dunbar by their illegal, discriminatory, and wrongful acts towards her;

4. Award Ms. Toyia Dunbar costs, interest, and attorneys' fees pursuant to KRS § 344; and

5. Grant her such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff, Ms. Client Name, demands a jury to try all issues triable by jury.

Respectfully submitted,

/s/ Samuel G. Hayward
Samuel G. Hayward
Shelby L. Campbell
ADAMS HAYWARD & WELSH
4036 Preston Highway
Louisville, Kentucky 40213
(502) 366-6456
samuelghayward@hotmail.com

## VERIFICATION

I have read the foregoing statements in the Verified Complaint and they are true and accurate to the best of my knowledge and belief.

_____
TOYIA DUNBAR

COMMONWEALTH OF KENTUCKY )
                          )
COUNTY OF Jefferson       )

Subscribed and sworn to before me by Toyia Dunbar, this 9th day of March 2022.

_____
NOTARY,
STATE-AT-LARGE, KENTUCKY

NOTARY ID # KYNP26865

My Commission Expires: 04/02/2025

```
SHANNON N. MANION
Notary Public, Notary ID # KYNP26865
State at Large, Kentucky
My commission expires 04/02/2025
```