UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| TOYIA DUNBAR, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 3:22-CV-304-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION &** |
| EVOLENT HEALTH, INC., ) | **ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff Toyia Dunbar's Motion to Amend. [R. 27]. Defendant Evolent Health, Inc. responded in opposition [R. 28], and Plaintiff did not reply. Also pending is Evolent's Motion to Dismiss. [R. 7]. Plaintiff responded [R. 17], and Evolent replied [R. 20]. For the reasons that follow, the Court will deny Plaintiff's Motion to Amend and grant Evolent's Motion to Dismiss.

**I.   BACKGROUND**

Plaintiff is a 62-year-old African American woman. [R. 27-1, Ex. 1 ("Amended Verified Complaint"), ¶¶ 7, 40]. She worked as a customer care connector for Evolent, a health insurance provider, from July 10, 2000, until she resigned on January 31, 2020. *Id.* at ¶¶ 8–10. Plaintiff's proposed Amended Complaint outlines a series of allegedly discriminatory actions by members of management at Evolent that Plaintiff suggests aggravated her existing mental health issues. *See id.* at ¶¶ 18, 30, 60. First, the Amended Complaint alleges that after using FMLA leave to take her mother to a doctor's appointment, a representative of Evolent's payroll department contacted Plaintiff to inform her that her timesheet had not been properly submitted. *Id.* at ¶ 11–12. Plaintiff directed the payroll department to speak to her supervisor, to whom Plaintiff had been submitting

her timesheets. *Id.* at ¶ 13. The payroll department continued to contact Plaintiff about her missing timesheets and, according to the Amended Complaint, "never mentioned whether they had reached out to her manager." *Id.* at ¶ 16.

Around June 16, 2017, Plaintiff took a leave of absence following the death of her mother. *Id.* at ¶ 17. When she returned to work, Plaintiff was informed she would need to attend a six-week training program because a new computer system was implemented during her leave. *Id.* at ¶¶ 19, 20. Plaintiff claims another employee who was on leave around the same time was only required to attend a two-to-three-week training program, and a third employee who was likewise on leave did not have to attend a training at all. *Id.* During the training program, Plaintiff informed her manager, David Yount, that "she did not feel comfortable working with the new system." *Id.* at ¶ 21. Plaintiff claims Yount responded, "Oh, you'll be okay" and "never acknowledged or greeted" Plaintiff for the remainder of the training. *Id.* She also alleges Yount, who is white, "consistently ignored [her] when she sought his assistance," including one instance when she was trying to apply for an internal position and another when she needed to contact him before leaving work for a family emergency. *Id.* at ¶¶ 30, 31, 42.

Plaintiff's Amended Complaint also alleges that while employed by Defendant, she "applied to several positions" within the company "in order to move out of customer services." *Id.* at ¶ 22. One such position was "community health worker." *Id.* at ¶ 23. Plaintiff claims a hiring manager told her she was qualified for the position, encouraged her to apply, and stated she "would be on the lookout" for Plaintiff's application. *Id.* Plaintiff received an interview but was later "informed that she did not qualify" for the position. *Id.* at ¶ 25. Plaintiff admits the hiring manager "never explicitly promised" her the job but suggests the manager "misled" her to believe she would get it. *Id.* at ¶ 24.

The Amended Complaint alleges that "several other employees within [Plaintiff's] department who were less experienced then (sic) her were receiving positions which they did not qualify for." *Id.* at ¶ 27. Plaintiff also offers that a "younger, and less experienced, employee received [a] position of which the Plaintiff was denied," but fails to name that employee. *Id.* at ¶¶ 52, 54. She alleges that younger employees were generally given "assistance in their efforts to transfer within the company," including help with applying for open positions and "leadership vouche[r]s." *Id.* at ¶¶ 53, 33. Plaintiff names Lindsay Yates and Morgan Ashby as two younger, white employees who allegedly received such "preferential treatment." *Id.* at ¶ 43. Plaintiff further alleges that "it had been implied to [her] on various occasions that she would be transferring within the company, only to be informed that she was . . . not qualified." *Id.* at ¶ 60.

Lastly, Plaintiff claims her physician "filled out several forms making requests for job accommodations" but the requests "went unfounded."[1] *Id.* at ¶ 34. She explains, "[t]he purpose of the doctor's accommodation request was to have [Plaintiff] moved from outbound calls to inbound calls," which would "accommodate[] her medical needs." *Id.* Because of her treatment at work, Plaintiff claims her anxiety and depression were "exacerbated . . . which led to her being prescribed medications." *Id.* at ¶ 30.

Based on these events, Plaintiff sued Evolent in Jefferson County Circuit Court for race discrimination (Count I), age discrimination (Count II), hostile work environment (Count III), and interference with FMLA rights (Count IV). *See generally* [R. 1-1, Ex. 1 ("Complaint")]. Evolent timely removed the action to this Court. [R. 1]. Evolent moved to dismiss Counts I, II, and III of

---

[1] Because "unfounded" means "having no foundation or basis in fact," the Court presumes Plaintiff means the requests were ignored or denied.

Plaintiff's Complaint, arguing Plaintiff fails to state a plausible claim for relief on any of the claims. [R. 7, pp. 4–10]. Plaintiff responded to Evolent's motion by citing to various facts not alleged in her Complaint, and at the conclusion of her response, stated, "In the Alternative, the Plaintiff asks leave of the court to file an Amended Complaint to include the necessary facts to allow the case to proceed." [R. 17, pp. 6, 12]. Evolent's reply urged the Court to disregard the additional facts asserted in Plaintiff's response brief because Plaintiff had, at that time, failed to file a motion to amend. *See* [R. 20, p. 2].

Indeed, Defendant correctly stated that the Court may not consider facts outside the pleading when ruling on a Rule 12(b)(6) motion to dismiss. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint.") (citation omitted). For that reason, the Court gave Plaintiff fourteen days to file a properly supported motion to amend. *See* [R. 23]. Plaintiff subsequently tendered a Motion to Amend. [R. 27]. Now, in response, Evolent argues that even if the Court allowed Plaintiff's proposed amendments, her Amended Complaint would still fail to state claims for age and race discrimination. [R. 28, pp. 2, 4]. Evolent also notes that Plaintiff's proposed amendments do not add any facts that address the deficiencies in her hostile work environment claim. *Id.* at 6. Evolent therefore submits that allowing Plaintiff to file an Amended Complaint would be futile, as her first three claims[2] would still fail as a matter of law. *Id.* at 7.

## II.      STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), "[l]eave to amend should be 'freely' granted 'when justice so requires.'" *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018)

---

[2] Evolent's Motion to Dismiss does not seek dismissal of Plaintiff's claim of interference with FMLA rights (Count IV), and that claim shall proceed.

- 4 -

(internal quotation marks and citations omitted). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* Sixth Circuit case law "manifests 'liberality in allowing amendments to a complaint.'" *Id.* Even so, courts should deny motions to amend that are brought in bad faith, for dilatory purposes, that result in undue delay or prejudice to the opposing party, or would be futile. *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010).

As stated, the Court may deny a motion for leave to amend when amendment "would be futile; for example, if the amended complaint would not survive a motion to dismiss." *Halcomb v. Black Mountain Res.*, LLC, 303 F.R.D. 496, 500 (E.D. Ky. 2014) (citing *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745–46 (6th Cir. 1992)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation

marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

### III.   ANALYSIS

#### 1.  Race Discrimination

The Kentucky Civil Rights Act (KCRA) makes it unlawful "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race[.]" KRS 344.040(l)(a). To sustain a race discrimination claim, a plaintiff must allege: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside of her protected class or was treated differently than similarly situated nonprotected employees. *Keys v. Humana*, 684 F.3d 605, 608 (6th Cir. 2012).

Here, Plaintiff appears to allege that she suffered an adverse employment action when she was overlooked for a promotion. To demonstrate an adverse employment action in the context of a failure to promote, a plaintiff must show: "'(1) [s]he is a member of a protected class; (2) [s]he applied and was qualified for a promotion; (3) [s]he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class

received promotions.'" *Johnson v. Box USA Grp., Inc.*, 208 F. Supp. 2d 737, 740 (W.D. Ky. 2002) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020–21 (6th Cir. 2000)); *see also Spees v. James Marine, Inc.*, 617 F.3d 380, 389 (6th Cir. 2010) ("[T]he KCRA is similar to Title VII of the 1964 federal Civil Rights Act and should be interpreted consistently with federal law.") (citation omitted); *Jefferson County v. Zaring*, 91 S.W.3d 583, 586 (Ky. 2002) (noting "the provisions of the KCRA are virtually identical to those of the Federal act," so "in this particular area we must consider the way the Federal act has been interpreted") (internal citation and quotation marks omitted).

Viewing the proposed Amended Complaint in the light most favorable to Plaintiff, accepting her allegations as true, and drawing all reasonable inferences in her favor, *see Gavitt*, 835 F.3d at 639–40 (citation omitted), Plaintiff still fails to state a plausible claim for race discrimination. Plaintiff's Amended Complaint states that she "is an African American female," [R. 27-1, Ex. 1 ("Amended Verified Complaint"), ¶¶ 7, 40], satisfying the first requirement that she be a member of a protected class. As for the second requirement, the Amended Complaint states that Plaintiff "was qualified for the position that she held, as she had worked [at Evolent] for approximately twenty (20) years." *Id.* at ¶ 41. This is satisfactory, at the pleading stage, to meet the second requirement that Plaintiff was qualified for her job before suffering an adverse employment action.

Plaintiff, however, fails to plausibly allege that she suffered an adverse employment action, as required at step three. As stated, the only adverse action Plaintiff appears[3] to allege is a failure

---

[3] The Court notes that Plaintiff's Amended Complaint fails, on the most basic level, to affirmatively state what adverse employment action Plaintiff allegedly suffered. The Court is therefore left to presume her discrimination claims are based on a failure-to-promote theory. Because, however, Plaintiff only alleges a failure to laterally transfer, versus a true failure to promote, she has failed to plausibly allege an adverse employment action. *See Jones v. Hazelwood Ctr.*,

to promote. Again, to plausibly allege an adverse employment action in the failure to promote context, Plaintiff must allege she applied and was qualified for a promotion. *See Johnson*, 208 F. Supp. 2d at 740 (citation omitted). The Amended Complaint provides that Plaintiff applied for at least one "position" for which management told Plaintiff she was qualified. *See id.* at ¶ 23 ("[T]he hiring manager[] had been in contact with Ms. Dunbar on several occasions regarding the position. [The hiring manager] had stated that Ms. Dunbar was qualified for the position, encouraged her to apply for it and ensured Mr. Dunbar that she would be on the lookout for her application."). These facts are sufficient to plausibly allege that Plaintiff was qualified for the position. At this time, the Court need only determine whether Plaintiff's Amended Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff need not "show that she satisfied an employer's 'objective' qualifications," *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009), or conclusively demonstrate that she was qualified for the position she applied for at the pleading stage.

Notwithstanding Plaintiff's qualifications, her Amended Complaint never refers to the "position" she applied and interviewed for as a promotion. The Amended Complaint simply explains Plaintiff "applied to several positions in order to move out of customer service" and "made it known to her superiors that she was struggling at her job and repeatedly asked for assistance to help her move to another department." *Id.* at ¶ 22. In fact, Plaintiff does not refer to any of the "positions" she applied for in other departments as "promotions" or otherwise indicate they would be anything but lateral moves from the position she then held. Interestingly, the

---

No. 2007-CA-000808-MR, 2008 WL 4091651, at *3 (Ky. Ct. App. Sept. 5, 2008) (acknowledging that "nothing in the record [] indicate[s] that [plaintiff] argued his case to the trial court as a 'failure-to-promote' case," but even if he had, "[t]he denial of [] a lateral transfer, assuming Jones had actually sought it, would not have been a materially adverse employment action by Hazelwood").

- 8 -

Amended Complaint only uses the word "promotion" one time, providing "younger Caucasian employees who were hired despite Ms. Dubnar's (sic) qualified attempts at promotion were Lindsay Yates [] and Morgan Ashby[.]" *Id.* at ¶ 28.

Accepting the facts alleged in her Amended Complaint as true and drawing all reasonable inferences in her favor, all signs indicate Plaintiff actually sought and was denied a lateral transfer, rather than a promotion. "In general, a lateral transfer, or the refusal to make a lateral transfer, is not a materially adverse action." *Freeman*, 200 F. App'x at 443 (citing *Mitchell v. Vanderbilt Univ.*, 389 F.3d at 177, 183 (6th Cir. 2004); *see also Momah v. Dominguez*, 239 F.App'x 114, 123 (6th Cir. 2007) ("[A] purely lateral transfer or denial of the same, which by definition results in no decrease in title, pay or benefits, is not an adverse employment action for discrimination purposes."); *Love v. Electric Power Bd. of Chattanooga, EPB*, 392 F.App'x 405, 408 (6th Cir. 2010) (affirming district court's finding that plaintiff did not suffer adverse employment action when denied a lateral transfer with no change in terms and conditions of employment).

Even assuming Plaintiff was denied a promotion, as opposed to a purely lateral transfer, Plaintiff also fails to sufficiently plead the fourth requirement for demonstrating discrimination in the failure-to-promote context, that "other employees of similar qualifications who were not members of the protected class received promotions." *Johnson*, 208 F. Supp. 2d at 740 (citation omitted). Plaintiff's proposed Amended Complaint names two employees, Lindsay Yates and Morgan Ashby, [R. 27-1, ¶¶ 52, 54], who allegedly "received preferential treatment," *id.* at ¶ 43, and "were hired despite [Plaintiff's] qualified attempts at promotion," *id.* at ¶ 28, but never states that either employee received a promotion. Again, Plaintiff offers that Ashby and Yates "were given ample assistance in their efforts to *transfer* within the company" and that the "same level of care was not given to Ms. Dunbar, as her attempts to move within the company, in an effort to

accommodate her ongoing medical needs, were consistently ignored." *Id.* at ¶ 53 (emphasis added). Even if Ashby and Yates were permitted to laterally transfer within the company and Plaintiff was not, that is insufficient to demonstrate race discrimination. Plaintiff's failure to allege that Ashby, Yates, or any other similarly situated employee not within Plaintiff's protected class received a promotion, as opposed to a transfer, is fatal to her claim.

Lastly, while Plaintiff states Yates and Ashby were "less experienced" than she was and that both are white, Plaintiff does not otherwise explain how either employee was similarly situated to her. "In order to show that a plaintiff is 'similarly situated' to another, the plaintiff is required to prove that all of the relevant aspects of their employment situation were 'nearly identical' to those of the 'similarly situated' employee." *McBrearty v. Kentucky Cmty. & Tech. Coll. Sys.*, 262 S.W.3d 205, 214 (Ky. Ct. App. 2008); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Gregory v. Louisville/Jefferson County Metro Government*, 2021 WL 6135559, at *4–5 (W.D. Ky. Dec. 29, 2021) (finding Plaintiff failed to state a claim when he did not specifically identify any similarly situated individuals or how the individuals referenced were similarly situated in any other relevant respect).

Although Plaintiff need not have proven, at the pleading stage, that all relevant aspects of her employment were similar to that of Yates or Ashby, she must at least provide facts that, if accepted as true, could do so. *See Harper v. Brown*, No. 2:21-CV-174, 2022 WL 2589918, at *5 (W.D. Mich. July 8, 2022) ("Plaintiff's allegation implies that he and the other [individual] were similarly situated, but he states no facts to support that implication. . . . Therefore, because Plaintiff fails to allege facts to show that comparators are similarly situated, Plaintiff has failed to state [a] claim."); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868,

881 (M.D. Tenn. 2013) ("Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").

Drawing all reasonable inferences in Plaintiff's favor, her Amended Complaint fails to state a plausible claim for race discrimination. Accordingly, the Court finds that allowing Plaintiff to amend her Complaint would be futile as to this claim.

### 2. Age Discrimination

The standards that apply to Plaintiff's age discrimination claim in many ways mirror those of her race discrimination claim. *See Back v. Nestle USA, Inc.*, 694 F.3d 571, 575–76 (6th Cir. 2012) ("Claims brought under the KCRA are analyzed in the same manner as ADEA claims.") (citations omitted). "To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show that (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker." *George v. Youngstown State Univ.*, 966 F.3d 446, 464 (6th Cir. 2020); *see also Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812–13 (6th Cir. 2011) ("To make out a prima facie case of age discrimination based on [] failure to promote[], [Plaintiff] must show that (1) she is a member of the protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied.").

The Amended Complaint provides that Plaintiff's date of birth is June 29, 1959, and, "as such, she is a member of a protected class." [R. 27-1, Ex. 1 ("Amended Verified Complaint"), ¶ 51]. The Amended Complaint further states that Plaintiff "was qualified for the position that she held, as she had worked [at Evolent] for approximately twenty (20) years," and that she "was

qualified for the [Community Health Worker] position" for which she applied and was denied. *Id.* at ¶¶ 41, 23. As with Plaintiff's race discrimination claim, Plaintiff has sufficiently pled that she is within a protected class, as she was over forty years old at the time of the alleged discrimination, and that she was qualified for the position she held prior to any alleged adverse action and qualified for the Community Health Worker position. However, the same deficiencies discussed above—Plaintiff's failure to sufficiently allege that she was denied a promotion, as opposed to a lateral transfer, or that any individuals similarly situated "in all relevant respects" did receive promotions—are likewise fatal to Plaintiff's age discrimination claim.

Plaintiff's Amended Complaint simply states, "[a] younger, less experienced, employee received the position of which the Plaintiff was denied," *id.* at ¶ 52, but does not name that employee. The Amended Complaint goes on to state, "[t]he names of younger employees who, despite being similarly situated, received preferential treatment are Lindsay Yates . . . and Morgan Ashby," *id.* at ¶ 54. The Amended Complaint also provides more generally that "several other employees within her department who were less experienced then [sic] her," including Yates and Ashby, "were receiving positions which they did not qualify for" and that "[o]ther employees within the company have been treated differently than [Plaintiff], who noticed that management helped others apply for jobs, gave them leadership vouche[r]s and helped them move within the company, even if they lack experience." *Id.* at ¶¶ 27, 33. While Plaintiff alleges younger employees received "preferential treatment," *id.* at ¶¶ 43, 54, were assisted when they wanted to "move within the company," *id.* at ¶ 33, and "receiv[ed] positions which they did not qualify for," *id.* at ¶ 27, she does not allege that these employees—some still unnamed—received *promotions*, as opposed to lateral transfers.

Again, it is well settled that an employer's denial of an employee's request for a purely lateral transfer is not actionable. *See Mitchell*, 389 F.3d at 183 ("Non-selection for a position of employment is not always an adverse employment action. In cases where the sought position is a lateral transfer, without additional benefits or prestige, it would be improper to conclude that a denial of such transfer would be a materially adverse action."); *Sherman v. Chrysler Corp.*, 47 F. App'x 716, 722, 719 (6th Cir. 2002) (upholding district court's finding that, for purposes of age discrimination, where "[t]he positions into which [plaintiff] was seeking to transfer involved similar duties, title, pay, and conditions of work," "the denial of those transfers did not [] constitute adverse employment actions" even where plaintiff showed individuals in their twenties and thirties received the positions he sought to transfer into).

Moreover, as previously stated with regard to Plaintiff's race discrimination claim, other than stating Ashby and Yates were "younger" and "less qualified" than she, Plaintiff offers no specific ages or qualifications for either employee and provides no facts that would indicate they are similarly situated to Plaintiff "in all relevant respects." *See Smith v. Wrigley Manufacturing Company, LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (dismissing age discrimination claim where plaintiff "offered no names, ages, or qualifications for the younger employees who were treated differently, or any examples of how their treatment differed"); *see also supra* Section III(1); *McBrearty*, 262 S.W.3d at 214; *Paterek*, 801 F.3d at 650; *Gregory*, 2021 WL 6135559, at *4–5; *Harper*, 2022 WL 2589918, at *5; *Project Reflect*, 947 F. Supp. 2d at 881.

Plaintiff's proposed Amended Complaint does not allege sufficient facts that, if accepted as true, state a plausible claim for age discrimination. Accordingly, allowing Plaintiff's proposed amendments would be futile as to that claim.

3. **Hostile Work Environment**

A claim for hostile work environment brought under the KCRA is analyzed under the same standards as the statute's federal counterpart, Title VII. *See Altenstadter v. Fibreworks Corp.*, No. 2010-CA-002187-MR, 2012 WL 28699, at *5 (Ky. Ct. App. Jan. 6, 2012) (citing *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 821 (Ky. 1992)). To prevail on such a claim, Plaintiff must show: (1) she belongs to a protected class; (2) she was subjected to harassment, either through words or actions, based on a protected class; (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Id.* at *6 (citing *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009)). The alleged harassment or actions must be "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive[.]" *Gray v. Kenton Cnty.*, 467 S.W.3d 801, 805 (Ky. Ct. App. 2014) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)).

"Whether the harassment is severe and pervasive is determined by a totality of the circumstances test—circumstances including frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance." *Id.* (citation omitted); *see also Lumpkins ex rel. Lumpkins v. City of Louisville*, 157 S.W.3d 601, 605 (Ky. 2005) ("Whether a work environment is hostile is determined on the totality of the circumstances and juries should not be encouraged to disaggregate individual circumstances.").

Plaintiff's proposed Amended Complaint provides that "as an African American female with a mental disability[4] over the age of forty," she is a member of a protected class. [R. 27-1, Ex. 1 ("Amended Verified Complaint"), ¶ 58]. The Amended Complaint further states, "[Plaintiff] was subjected to unwelcomed harassment. [She] was consistently ignored, even when she was facing devastating family emergencies which needed her prompt attention." *Id.* at ¶ 59. The Complaint also alleges that "it had been implied to [Plaintiff] on various occasions that she would be transferring within the company, only to be informed that she was instead, not qualified. These contradictions weighed heavily on [Plaintiff], exacerbating her Anxiety and Depression." *Id.* at ¶ 60.

Accepting these allegations as true, Plaintiff has failed to allege facts that demonstrate a hostile work environment. While the Sixth Circuit "has found that accounts of racial or gender isolation can support hostile workplace claims, those cases involved isolation of a different magnitude" than what Plaintiff alleges here. *Strickland v. City of Detroit*, 995 F.3d 495, 507 (6th Cir. 2021). The Court of Appeals went on to succinctly describe those cases:

> In *Moore v. KUKA Welding Systems & Robot Corp.*, the "[p]laintiff testified that a couple of weeks after he filed the [EEOC] complaint, his supervisor and other employees began to avoid him and would not talk to him." *Moore*, 171 F.3d at 1078. The plaintiff's supervisor instructed other employees to move their equipment, so they would have no reason to go near the plaintiff, and also rearranged staffing so that the plaintiff was left as the only employee in his department. *Id.* Moore's isolation lasted for over a year until he quit. *Id.* Other cases where this Court has found isolation to constitute harassment supporting a hostile workplace claim have been characterized by similarly concerted and pervasive efforts to segregate the plaintiff from the rest of the workforce. *See Waldo v.*

---

[4] For the first time in her response brief, Plaintiff claimed that "because of [her] mental disability, [she] was being treated differently than her co-workers." [R. 17, p. 11]. But Plaintiff does not make a claim for discrimination based on mental illness or disability in her proposed Amended Complaint. If Plaintiff wanted to assert such a claim, she should have done so when the Court allowed her to file a motion to amend her Complaint. Since Plaintiff did not attempt to amend her Complaint to add such a claim, the Court declines to entertain any argument concerning alleged discrimination based on mental disability.

>*Consumers Energy Co.*, 726 F.3d 802, 815–16 (6th Cir. 2013) (describing isolation of female employee from work, dining, and transportation); *Jordan v. City of Cleveland*, 464 F.3d 584, 589–90 (6th Cir. 2006) (affirming denial of the defendant's Fed. R. Civ. P. 50 motion for judgment as a matter of law in part because African American plaintiff had experienced "general isolation").

*Id.* Here, Plaintiff alleges that she was "consistently ignored" by her manager, David Yount, but describes only one instance where she needed to contact him in an emergency and could not get ahold of him, and another where he "ignored her concerns" during a training on a new computer system and "never acknowledged or greeted" her the rest of the training. *See* [R. 27-1 ("Amended Verified Complaint"), ¶¶ 31, 32, 42]. She also notes Yount "has a previous history of not returning [her] phone calls or emails." *Id.* at ¶ 15.

In general, "hostile work environment discrimination must be severe or pervasive and more than episodic." *Lumpkins*, 157 S.W.3d at 605. Even at the pleading stage, Plaintiff's claims are insufficient to indicate Plaintiff was isolated or intentionally segregated from the rest of the workforce at Evolent, that Yount's behavior was severe or pervasive, or that it materially harmed Plaintiff. *See, e.g.*, *Dieng v. Am. Institutes for Rsch. in Behav. Scis.*, 412 F. Supp. 3d 1, 14 (D.D.C. 2019) (granting motion to dismiss and finding "denial of teleworking , . . yelling at [plaintiff] during staff meetings, . . . ignoring her at those meetings, . . . and 'constant questioning of [her] work,'" was "not sufficiently severe or pervasive to state a hostile work environment claim"); *Ragland v. F & M Koz, Inc.*, No. 2:21-CV-02530-TLP-CGC, 2022 WL 945317, at *6 (W.D. Tenn. Mar. 29, 2022) (dismissing hostile work environment claim where plaintiff was asked if he was on drugs, compared to a character from The Chappelle Show, and called a "crackhead" in front of "management, staff and patrons" at his workplace because the court found alleged conduct, "which all occurred within a single day, does not qualify as 'severe and pervasive'"); *McKelvey v. Chattanooga Publ'g Co.*, No. 1:04-CV-160, 2005 WL 8162355, at *10–11 (E.D. Tenn. Nov. 14,

2005) (finding no disparate treatment discrimination where supervisor gave African American plaintiff the "cold shoulder," "avoided her 'in any way possible,'" and transferred some of her "lucrative accounts" to white sales representatives).[5]

Moreover, Plaintiff's contention that the "contradictions" of management implying "she would be transferring within the company, only to be informed that she was instead, not qualified" created an intimidating, hostile, or offensive work environment, [R. 27-1 ("Amended Verified Complaint"), ¶¶ 60, 61], is insufficient. First, as more thoroughly set forth above, "a lateral transfer, or the refusal to make a lateral transfer, is not a materially adverse action." *Freeman*, 200 F. App'x at 443 (citing *Mitchell*, 389 F.3d at 177, 183). Second, even if Plaintiff's mental health suffered from the ups and downs of applying for and not receiving various internal positions, her Amended Complaint does not allege any facts that demonstrate harassment by management through the application or interview process, either through words or action. *Altenstadter*, 2012 WL 28699, at *6. Plaintiff admits the hiring manager "never explicitly promised" her a promotion or a transfer. *Id.* at ¶ 24. And although Plaintiff believes the hiring manager "misled" her into thinking she was qualified for various positions she applied for, she alleges no facts to indicate the hiring manager's encouragement that Plaintiff apply to those positions constituted harassment.

Even assuming the conduct Plaintiff alleges rose to the level of harassment, Plaintiff fails to allege, even in a conclusory fashion, that any purported harassment was based on her protected status. Because Plaintiff does not make any allegations connecting the purported harassment to her age or race, she fails to state a hostile work environment claim. *Colter v. Bowling Green-Warren*

---

[5] The Court recognizes that *McKelvey* was decided at summary judgment and relies on the case only insofar as it deems similar factual allegations non-severe and non-pervasive.

*Cnty. Regional Airport Bd.*, 2017 WL 5490920, at *6 (W.D. Ky. Nov. 15, 2017) (dismissing hostile work environment claim where plaintiff alleged no facts to suggest alleged conduct was related to his protected class); *Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 471 (6th Cir. 2012) ("[C]onduct that is demeaning or humiliating but that does not evidence hostility towards a protected class is not actionable[.]") (citation omitted).

Finally, Plaintiff's Amended Complaint fails to allege facts to support that any alleged harassment unreasonably interfered with her work performance. Plaintiff provides, "[t]he harassment unreasonable (sic) interfered with [Plaintiff's] work performance by creating and/or condoning an intimidating, hostile, or offensive work environment." [R. 27-1 ("Amended Verified Complaint"), ¶ 61]. This allegation simply regurgitates the relevant portion of the hostile work environment standard and makes no attempt to plead any facts indicating how Plaintiff's work performance was affected. This is wholly insufficient to plead a hostile work environment claim. *See Keys*, 2013 WL 5740109, at *4 (dismissing hostile work environment claim where plaintiff failed to allege her job was rendered more difficult by hostility or harassment); *Micca v. Compass Group USA, Inc.*, 2015 WL 3407348, at *4 (W.D. Ky. May 26, 2015) (dismissing hostile work environment claim where complaint "lack[ed] any factual content to support a plausible inference of a hostile work environment claim").

As with her first two claims, Plaintiff's proposed Amended Complaint does not allege sufficient facts that, if accepted as true, state a plausible claim for hostile work environment. This would be true even if the Court allowed Plaintiff's proposed amendments, since they did not alter the facts of her hostile work environment claim.

## IV.     CONCLUSION

Based on the foregoing, the Court finds that granting Plaintiff's Motion to Amend would be futile, as the proposed Amended Complaint would still not survive Evolent's Motion to Dismiss. Accordingly, the Court will deny Plaintiff's Motion to Amend and grant Evolent's Motion to Dismiss Counts I, II, and III. Plaintiff's claim for Interference with FMLA Rights (Count IV) remains.

**IT IS THEREFORE ORDERED** as follows:

1. Plaintiff Toyia Dunbar's Motion to Amend [R. 27] is **DENIED**.

2. Defendant Evolent Health Plan's Partial Motion to Dismiss [**R. 7**] is **GRANTED**.

This the 2nd day of March, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY